No. 22-1280

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

————————

COALITION FOR TJ,

*Plaintiff – Appellee,*

v.

FAIRFAX COUNTY SCHOOL BOARD,

*Defendant-Appellant.*

————————

On Appeal from the United States District Court
for the Eastern District of Virginia, Case No. 1:21-cv-00296-CMH
The Hon. Claude M. Hilton, District Judge

————————

**BRIEF OF AMICUS CURIAE COMMONWEALTH OF VIRGINIA
IN SUPPORT OF APPELLEE'S RESPONSE TO
APPELLANT'S MOTION TO STAY PENDING APPEAL**

————————

JASON S. MIYARES
  *Attorney General*

CHARLES H. SLEMP, III
  *Chief Deputy Attorney General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-5315 – Telephone
(804) 371-0200 – Facsimile

March 30, 2022

ANDREW N. FERGUSON
  *Solicitor General*

ERIKA L. MALEY
  *Principal Deputy Solicitor General*

KEVIN M. GALLAGHER
  *Deputy Solicitor General*

ANNIE CHIANG
  *Assistant Solicitor General*

*Counsel for the Commonwealth of
Virginia*

## CORPORATE DISCLOSURE STATEMENT

As a governmental party, amicus curiae is not required to file a certificate of interested persons. Fed. R. App. P. 26.1(a).

# TABLE OF CONTENTS

**Page(s)**

TABLE OF CONTENTS ............................................................ iii

TABLE OF AUTHORITIES .....................................................iv

INTRODUCTION.................................................................... 1

IDENTITY AND INTERESTS OF AMICUS CURIAE ........................... 2

BACKGROUND ...................................................................... 2

ARGUMENT ......................................................................... 7

   I.  Granting the stay would force Asian-American students to face unconstitutional and irreparable racial discrimination .......... 8

   II. The Board's alleged injury is self-inflicted ..................................... 11

CONCLUSION ...................................................................... 14

CERTIFICATE OF COMPLIANCE.......................................... 16

CERTIFICATE OF SERVICE.................................................. 17

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Coalition for TJ v. Fairfax Cnty. Sch. Bd.*,
2022 WL 579809 (E.D. Va. Feb. 25, 2022) ................................ *passim*

*Di Biase v. SPX Corp.*,
872 F.3d 224 (4th Cir. 2017) ............................................... 12

*Elrod v. Burns*,
427 U.S. 347 (1976) .......................................................... 8

*Fisher v. University of Tex. at Austin*,
570 U.S. 297 (2013) ......................................................... 10

*Giovani Carandola, Ltd. v. Bason*,
303 F.3d 507 (4th Cir. 2002) ............................................... 11

*Livonia Props. Holdings, LLC v. 12840-12976 Farmington Rd. Holdings*,
399 Fed. Appx. 97 (6th Cir. 2010) ......................................... 12

*Minney v. United States Office of Personnel Mgmt.*,
130 F. Supp. 3d 225 (D.D.C. 2015) ......................................... 8

*Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*,
22 F.3d 546 (4th Cir. 1994) ................................................ 11

*Nken v. Holder*,
556 U.S. 418 (2009) .......................................................... 7

*Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*,
551 U.S. 701 (2007) .............................................. 1, 7, 11, 14

*Salt Lake Tribune Pub. Co., LLC v. AT&T Corp.*,
320 F.3d 1081 (10th Cir. 2003) ............................................ 12

*San Francisco Real Estate Inv'rs v. Real Estate Inv. Trust of Am.*,
   692 F.2d 814 (1st Cir. 1982) ................................................................ 12

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
   429 U.S. 252 (1977) ............................................................................... 9

## Other Authorities

Federal Rule of Appellate Procedure 29(a)(2) ......................................... 2

Gifted, *TJHSST Offers Admission to 550 Students; Broadens Access to Students Who Have an Aptitude for Stem* (June 23, 2021), https://tinyurl.com/3pduh7ep ............................................. 9

# INTRODUCTION

The Supreme Court has "many times over" reaffirmed that "racial balance is not to be achieved for its own sake." *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 729–30 (2007) (cleaned up). Racial balancing is contrary to the Supreme Court's "repeated recognition that at the heart of the Constitution's guarantee of equal protection lies the simple command that the Government must treat citizens as individuals, not as simply components of a racial … class." *Id.* at 730 (cleaned up).

Appellant Fairfax County School Board (Board) set out to "remake" admissions at Thomas Jefferson High School for Science and Technology (TJ) because it was "dissatisfied with the racial composition of the school." *Coalition for TJ v. Fairfax Cnty. Sch. Bd.*, 2022 WL 579809, at *5 (E.D. Va. Feb. 25, 2022). To accomplish its goal of "achieving racial balance," the Board replaced its race-neutral and meritocratic admissions policy with a new one designed to decrease Asian-American enrollment. *Ibid.* The Board now asks this Court to reinstitute this unconstitutional policy. This Court should deny the Board's request.

## IDENTITY AND INTERESTS OF AMICUS CURIAE[1]

Amicus curiae the Commonwealth of Virginia has interests in protecting its citizens' Fourteenth Amendment rights, in ensuring that local entities comply with federal law, and in providing a public education. Granting the Board's Motion to Stay Pending Appeal (Mot.) would undermine each of these interests, as it would permit the Board to reinstate its unconstitutional policy for at least another class of Virginia students.

Virginia agrees with the arguments advanced by Appellee Coalition for TJ and submits this brief to illuminate the serious equitable concerns that weigh against granting the Board's motion.

## BACKGROUND

TJ is an Academic-Year Governor's School in Alexandria, Virginia, administered as part of Fairfax County Public Schools. It is regularly

---

[1] This brief is filed under Federal Rule of Appellate Procedure 29(a)(2). All parties have consented to the filing of this brief. No party's counsel authored this brief in whole or in part, no party or party's counsel contributed money that was intended to fund preparing or submitting the brief, and no person—other than the Commonwealth of Virginia or its counsel—contributed money that was intended to fund preparing or submitting this brief.

recognized as one of the best public high schools in the nation. Prospective students must apply for a spot under the school's admission policy. Prior to 2020, applicants were awarded admission from a semifinalist pool "based on a holistic review that considered GPA, test scores, teacher recommendations, and responses to three writing prompts and a problem-solving essay." *Coalition for TJ*, 2022 WL 579809, at *1.

In the fall of 2020, the Board's Superintendent, Scott Brabrand, presented a series of proposals to overhaul the school's admissions process to change "the racial makeup of TJ." *Id.* at *4. This change was motivated in part by pressure from the state to improve "diversity" at Governor's Schools, which the Board interpreted as a "looming specter of a Richmond takeover" unless the Governor's Schools admissions were "within 5% of diversity in their local districts." *Id.* at *2. This concern "pushed the Board to act quickly to change TJ admissions with an explicit eye towards its racial composition." *Id.* at *7. The Board was also motivated by nationwide protests following George Floyd's murder, with one Board member, for instance, stating "in looking at what has happened to George Floyd ... we must recognize the unacceptable

numbers of such things as the unacceptable numbers of African Americans that have been accepted to TJ." *Ibid*. TJ's principal also publicly criticized the numbers of Black students admitted, stating if the school's "community … reflect[ed] racial composition in FCPS," then the school "would enroll 180 black and 460 Hispanic students, filling nearly 22 classrooms." *Id.* at *2.

"[T]o increase and decrease the representation of certain racial groups at TJ to align with districtwide enrollment data," *id.* at *7, the Board replaced the prior admission process with a single-round "holistic" admissions process, Mot. 6. That new policy, among other things, eliminated the consideration of standardized test scores, "guarantee[d] seats for students at each public middle school … equivalent to 1.5% of the school's eighth grade class size," and added consideration of "certain 'Experience Factors,'" including preferences for students from "a middle school deemed historically underrepresented." *Coalition for TJ*, 2022 WL 579809, at *2.

These features disproportionately suppressed the admission of Asian-American applicants. Certain Fairfax County middle schools serve as "Advanced Academic Program" centers; gifted students who would

otherwise attend multiple different schools based on their residence may apply to attend these centers. *Id.* at *9. Historically, these middle school gifted centers have served as "feeder schools" to TJ, and Asian-American students have made up a disproportionately large share of applicants from the "feeder schools." Resp. Br. TJ-187.[2]

The changes to the admissions policy "doubly … target" "students who are Asian and attend high performing middle schools … because of their … race and abilities." *Id.* at TJ-137. First, the "Experience Factors" give a preference to students attending "a middle school deemed 'historically underrepresented at TJ,'" thus categorically disadvantaging students attending gifted programs at the "feeder schools." *Coalition for TJ*, 2022 WL 579809, at *6. Second, the policy sets aside seats in each incoming class sufficient to guarantee that "1.5% of [each middle] school's 8th grade student population" could attend TJ. *Id.* at *2. That set-aside leaves only about 100 of 550 total seats in each class unallocated. Resp. Br. TJ-187, TJ-394; *Coalition for TJ*, 2022 WL 579809, at *2. Again, the

---

[2] For ease of review, the Commonwealth cites certain documents in the appendix to Coalition for TJ's Response (Resp. Br.) marked with "TJ" page numbers.

set-aside disproportionately disadvantages Asian-American applicants, including those attending middle-school gifted centers, by forcing them to compete largely "against other applicants *from the same school*," rather than all other eligible students across the entire school system. Resp. Br. TJ-394 (emphasis added). Thus, the policy "disproportionately forces Asian-American students to compete against more eligible and interested applicants (often each other) for the allocated seats at their middle schools." *Coalition for TJ*, 2022 WL 579809, at *6

Just as the Board had predicted and intended, this policy change drastically decreased the number of Asian-American students admitted to TJ. Percentages of Asian-American students in the five years prior to the policy change never fell below 65%, and were typically between 70% and 75%. *Id.* at *6; Resp. Br. 14–15; Reply Br. 3. Only 54% of the first class after the Board imposed the challenged admission policy, however, were Asian-American students; the school admitted 56 fewer Asian-American students for the class of 2025 despite the admitted class size increasing by 64 students. *Coalition for TJ*, 2022 WL 579809, at *2, *6; Resp. Br. 15; Reply Br. 3.

Coalition for TJ sued and alleged that the new policy unconstitutionally discriminated against Asian-American applicants on the basis of race. *Coalition for TJ*, 2022 WL 579809, at *1. The district court agreed, granting Coalition for TJ's summary judgment motion and enjoining the Board from further use or enforcement of the policy. *Id.* at *11. The Board appealed that decision and asked the district court to stay its injunction. The district court declined, and the Board now makes the same request of the Court.

## ARGUMENT

To justify a stay pending appeal, the Board must establish: (1) that it has made a strong showing that it is likely to succeed on the merits; (2) that it will be irreparably injured absent a stay; (3) that issuance of the stay will not substantially injure the other parties interested in the proceeding; and (4) that the public interest favors granting the stay. *Nken v. Holder*, 556 U.S. 418, 426 (2009). The Commonwealth of Virginia agrees with the Coalition for TJ that the Board is unlikely to succeed on the merits, largely for the reasons stated in Appellee's Response. The Commonwealth submits this brief to explain further reasons why the Board cannot meet the other three factors.

## I. Granting the stay would force Asian-American students to face unconstitutional and irreparable racial discrimination

The challenged policy is "directed only to racial balance, pure and simple," an objective the Supreme Court "has repeatedly condemned as illegitimate." *Parents Involved*, 551 U.S. at 726. Staying the district court's order and allowing the Board to continue unconstitutionally discriminating against Asian-Americans would both constitute irreparable harm to Asian-American students *and* harm the public interest. See, *e.g.*, *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (the deprivation of a constitutional right "for even minimal periods of time, unquestionably constitutes irreparable injury"); *Minney v. United States Office of Personnel Mgmt.*, 130 F. Supp. 3d 225, 236 (D.D.C. 2015) ("Applying the law in a way that violates the Constitution is *never* in the public's interest[.]").

Under the Board's challenged admission policy, "Asian-American applicants are disproportionately deprived of a level playing field in competing for ... seats." *Coalition for TJ*, 2022 WL 579809, at *6. The Board did so by doubly disadvantaging Asian-American applicants to compete against "more eligible and interested applicants." *Ibid.* As a result of the policy change, the proportion of Asian-American students

admitted into the school for the class of 2025 dropped 19% in one year, *ibid.*, while admitted students of every other racial group increased.[3] The discriminatory effect of this admission policy—that "[i]t will whiten [the] schools and kick our [sic] Asians"—was not an unfortunate byproduct; it was the policy's purpose. Resp. Br. TJ-234 (text message exchange between Board members Abrar Omeish and Stella Pekarsky).

"The specific sequence of events leading up to the challenged decision also may shed some light on the decisionmaker's purposes," including on whether the actions were "taken for invidious purposes." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267 (1977). Here, the history of the policy reveals its discriminatory purpose. First, the events that catalyzed the Board's actions—pressure from the state, protests following George Floyd's murder, and local officials, including TJ's president, desire to change the school's racial composition to match the demographics of the school system—confirm that the Board hoped the challenged policy would bring the school's racial composition

---

[3] See Fairfax County Association for the Gifted, *TJHSST Offers Admission to 550 Students; Broadens Access to Students Who Have an Aptitude for Stem* (June 23, 2021), https://tinyurl.com/3pduh7ep.

into its desired balance. *Supra* at 3–4. But the Supreme Court has made clear that racial balancing for its own sake is "patently unconstitutional." *Fisher v. University of Tex. at Austin*, 570 U.S. 297, 311 (2013) (quotation marks omitted).

Second, the Board members themselves recognized that "this process" "discriminated against" Asian-Americans and that "there has been anti [A]sian feel underlying some of this" "made obvious" by "racist" and "demeaning" references made by Superintendent Brabrand. Resp. Br. TJ-234 (Omeish and Pekarsky) (quoting Brabrand's derogatory comments on Asian-Americans "pay[ing] to play, etc." which references his belief about "a cultural issue" where "they … prioritize education" by "mak[ing] choices" or "mak[ing] huge sacrifices" even though "a lot of them can't afford it anyway"). Board members even acknowledged the "deliberate" racism in the new policy. *Id.* at TJ-243 (Pekarsky) (explaining that Brabrand "[c]ame right out of the gate blaming them," in reference to "Asians"). As the district court explained, the Board members "need not harbor racial animus to act with discriminatory intent." *Coalition for TJ*, 2022 WL 579809, at *5. "What matters is that

the Board acted at least in part because of, not merely in spite of, the policy's adverse effects upon an identifiable group." *Id.* at *10.

Allowing the Board to use the challenged policy for yet another year will result in irreparable harm. This year's Asian-American applicants will suffer a "*permanent* loss" of being subjected to an unconstitutional admissions process that disadvantages them based upon their race. *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 552 (4th Cir. 1994) (emphasis added); *see also Parents Involved*, 551 U.S. at 719 ("one form of injury under the Equal Protection Clause is being forced to compete in a race-based system that may prejudice the plaintiff"). And denying the stay best serves the public interest. It prevents the Board from subjecting Asian-American applicants to an unconstitutional policy that was designed to harm them, and in fact did so. "[U]pholding constitutional rights surely serves the public interest." *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521 (4th Cir. 2002).

## II.    The Board's alleged injury is self-inflicted

The Board contends that it will suffer irreparable harm absent a stay because it would need to "design a new admissions policy from the

ground up in a matter of weeks." Mot. 18. But the district court put the Board "on notice" *in September* that "if it's determined that this process has been discriminatory," the Board would need to "be prepared for that." Resp. Br. TJ-148. Rather than heed the district court's admonition to begin preparing a contingency plan, the Board sat on its hands for half a year, contending that it could not be expected to anticipate "a district court ruling that provides no guiding principles for a new policy and that will likely be overturned on appeal." Mot. 21.

A stay is inappropriate when the movant fails to show "that [it] availed [itself] of opportunities to avoid the injuries of which [it] now complain[s]." *Di Biase v. SPX Corp.*, 872 F.3d 224, 235 (4th Cir. 2017). Such self-inflicted harm is "not only not irreparable," but also "entirely avoidable." *San Francisco Real Estate Inv'rs v. Real Estate Inv. Trust of Am.*, 692 F.2d 814, 818 (1st Cir. 1982). Accordingly, courts have declined to consider harms that are self-inflicted by the moving party. See, *e.g.*, *Livonia Props. Holdings, LLC v. 12840-12976 Farmington Rd. Holdings*, 399 Fed. Appx. 97, 104 (6th Cir. 2010); *Salt Lake Tribune Pub. Co., LLC v. AT & T Corp.*, 320 F.3d 1081, 1106 (10th Cir. 2003).

Moreover, the Board is simply wrong that it must create a new policy from whole cloth. The Board contends that reverting to its previous admissions policy is not an option because two of the three tests upon which TJ previously evaluated candidates are no longer commercially available. Mot. at 18. But even if true, this argument misses the forest for the trees. The previous policy was not just a series of standardized tests; it was a comprehensive policy with several layers of requirements. See *Coalition for TJ*, 2022 WL 579809, at *1. At the very least, the Board could easily eliminate the set-aside and end its consideration of whether an applicant attends a "historically underrepresented" middle school as an "Experience Factor," both policies that the district court found disproportionately discriminated against Asian-American students. *Id.* at *6.

Sanctioning the Board's gamesmanship would encourage litigants to delay implementing or even planning any mitigation measures, and then rely on their own brinksmanship as establishing irreparable harm. The stay motion should be denied.

# CONCLUSION

"[E]very time the government uses racial criteria to bring the races together, someone gets excluded, and the person excluded suffers an injury solely because of his or her race. … This type of exclusion, solely on the basis of race, is precisely the sort of government action that pits the races against one another, exacerbates racial tension, and provoke[s] resentment among those who believe that they have been wronged by the government's use of race." *Parents Involved*, 551 U.S. at 759 (Thomas, J. concurring) (cleaned up). The Board's exclusionary program did just that and should not be permitted to continue. This Court should deny the stay.

Respectfully submitted,

By: _/s/ Andrew N. Ferguson_
        Andrew N. Ferguson
        *Solicitor General*

JASON S. MIYARES
  *Attorney General*

CHARLES H. SLEMP, III
  *Chief Deputy Attorney General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-5315 – Telephone
(804) 371-0200 – Facsimile

March 30, 2022

ERIKA L. MALEY
  *Principal Deputy Solicitor General*

KEVIN M. GALLAGHER
  *Deputy Solicitor General*

ANNIE CHIANG
  *Assistant Solicitor General*

*Counsel for the Commonwealth of Virginia*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 29(a)(5) because it contains 2,592 words, excluding the parts of the brief exempted by Rule 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century typeface.

*/s/ Andrew N. Ferguson*
Andrew N. Ferguson

## CERTIFICATE OF SERVICE

I certify that on March 30, 2022, the foregoing document was served

on all parties or their counsel of record through the CM/ECF system.

*/s/ Andrew N. Ferguson*

Andrew N. Ferguson

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
## APPEARANCE OF COUNSEL FORM

**BAR ADMISSION & ECF REGISTRATION:** If you have not been admitted to practice before the Fourth Circuit, you must complete and return an Application for Admission before filing this form. If you were admitted to practice under a different name than you are now using, you must include your former name when completing this form so that we can locate you on the attorney roll. Electronic filing by counsel is required in all Fourth Circuit cases. If you have not registered as a Fourth Circuit ECF Filer, please complete the required steps at Register for eFiling.

THE CLERK WILL ENTER MY APPEARANCE IN APPEAL NO. 22-1280 _____ as

☐ Retained ☐ Court-appointed(CJA) ☐ CJA associate ☐ Court-assigned(non-CJA) ☐ Federal Defender

☐ Pro Bono ☑ Government

COUNSEL FOR: The Commonwealth of Virginia _____

_____ as the
(party name)

☐ appellant(s) ☐ appellee(s) ☐ petitioner(s) ☐ respondent(s) ☑ amicus curiae ☐ intervenor(s) ☐ movant(s)

/s/ Andrew N. Ferguson _____
(signature)

**Please compare your information below with your information on PACER. Any updates or changes must be made through PACER's Manage My Account.**

Andrew N. Ferguson _____
Name (printed or typed)

(804) 786-7704 _____
Voice Phone

The Office of Attorney General _____
Firm Name (if applicable)

_____
Fax Number

202 N 9th St. _____
Address

Richmond, VA 23219 _____

aferguson@oag.state.va.us _____
E-mail address (print or type)

**CERTIFICATE OF SERVICE** *(required for parties served outside CM/ECF)*: I certify that this document was served on _____ by ☐ personal delivery; ☐ mail; ☐ third-party commercial carrier; or ☐ email (with written consent) on the following persons at the addresses or email addresses shown:

_____
Signature

_____
Date

[Print for PDF for Filing] [Reset Form]

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
## APPEARANCE OF COUNSEL FORM

**BAR ADMISSION & ECF REGISTRATION:** If you have not been admitted to practice before the Fourth Circuit, you must complete and return an Application for Admission before filing this form. If you were admitted to practice under a different name than you are now using, you must include your former name when completing this form so that we can locate you on the attorney roll. Electronic filing by counsel is required in all Fourth Circuit cases. If you have not registered as a Fourth Circuit ECF Filer, please complete the required steps at Register for eFiling.

THE CLERK WILL ENTER MY APPEARANCE IN APPEAL NO. __22-1280__ as

☐ Retained  ☐ Court-appointed(CJA)  ☐ CJA associate  ☐ Court-assigned(non-CJA)  ☐ Federal Defender

☐ Pro Bono  ☑ Government

COUNSEL FOR: __The Commonwealth of Virginia__

_____ as the
(party name)

☐ appellant(s)  ☐ appellee(s)  ☐ petitioner(s)  ☐ respondent(s)  ☑ amicus curiae  ☐ intervenor(s)  ☐ movant(s)

__/s/ Erika L. Maley__
(signature)

**Please compare your information below with your information on PACER. Any updates or changes must be made through PACER's Manage My Account.**

| | |
|---|---|
| __Erika L. Maley__ | __571-335-2837__ |
| Name (printed or typed) | Voice Phone |
| __Virginia Office of Solicitor General__ | |
| Firm Name (if applicable) | Fax Number |
| __202 N 9th St, Rcihmond, VA 23219__ | |
| | __emaley@oag.state.va.us__ |
| Address | E-mail address (print or type) |

**CERTIFICATE OF SERVICE** *(required for parties served outside CM/ECF)*: I certify that this document was served on _____ by ☐ personal delivery; ☐ mail; ☐ third-party commercial carrier; or ☐ email (with written consent) on the following persons at the addresses or email addresses shown:

_____        _____
Signature                                             Date

[ Print for PDF for Filing ]   [ Reset Form ]

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
## APPEARANCE OF COUNSEL FORM

**BAR ADMISSION & ECF REGISTRATION:** If you have not been admitted to practice before the Fourth Circuit, you must complete and return an Application for Admission before filing this form. If you were admitted to practice under a different name than you are now using, you must include your former name when completing this form so that we can locate you on the attorney roll. Electronic filing by counsel is required in all Fourth Circuit cases. If you have not registered as a Fourth Circuit ECF Filer, please complete the required steps at Register for eFiling.

THE CLERK WILL ENTER MY APPEARANCE IN APPEAL NO. 22-1280 _____ as

☐ Retained  ☐ Court-appointed(CJA)  ☐ CJA associate  ☐ Court-assigned(non-CJA)  ☐ Federal Defender

☐ Pro Bono  ☑ Government

COUNSEL FOR: The Commonwealth of Virginia

_____ as the
(party name)

☐ appellant(s)  ☐ appellee(s)  ☐ petitioner(s)  ☐ respondent(s)  ☑ amicus curiae  ☐ intervenor(s)  ☐ movant(s)

/s/ Kevin M. Gallagher
_____
(signature)

**Please compare your information below with your information on PACER. Any updates or changes must be made through PACER's Manage My Account.**

| | |
|---|---|
| Kevin M. Gallagher | (804) 592-8307 |
| Name (printed or typed) | Voice Phone |
| The Office of Attorney General | |
| Firm Name (if applicable) | Fax Number |
| 202 N 9th St. | |
| Richmond, VA 23219 | kgallagher@oag.state.va.us |
| Address | E-mail address (print or type) |

**CERTIFICATE OF SERVICE** *(required for parties served outside CM/ECF)*: I certify that this document was served on _____ by ☐ personal delivery; ☐ mail; ☐ third-party commercial carrier; or ☐ email (with written consent) on the following persons at the addresses or email addresses shown:

_____        _____
Signature                                              Date

Print for PDF for Filing    Reset Form

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
## APPEARANCE OF COUNSEL FORM

**BAR ADMISSION & ECF REGISTRATION:** If you have not been admitted to practice before the Fourth Circuit, you must complete and return an Application for Admission before filing this form. If you were admitted to practice under a different name than you are now using, you must include your former name when completing this form so that we can locate you on the attorney roll. Electronic filing by counsel is required in all Fourth Circuit cases. If you have not registered as a Fourth Circuit ECF Filer, please complete the required steps at Register for eFiling.

THE CLERK WILL ENTER MY APPEARANCE IN APPEAL NO. 22-1280 _____ as

☐ Retained ☐ Court-appointed(CJA) ☐ CJA associate ☐ Court-assigned(non-CJA) ☐ Federal Defender

☐ Pro Bono ☑ Government

COUNSEL FOR: The Commonwealth of Virginia _____

_____ as the
(party name)

☐ appellant(s) ☐ appellee(s) ☐ petitioner(s) ☐ respondent(s) ☑ amicus curiae ☐ intervenor(s) ☐ movant(s)

/s/ Annie Chiang
(signature)

**Please compare your information below with your information on PACER. Any updates or changes must be made through PACER's Manage My Account.**

| | |
|---|---|
| Annie Chiang | (804) 921-7025 |
| Name (printed or typed) | Voice Phone |
| The Office of Attorney General | |
| Firm Name (if applicable) | Fax Number |
| 202 N 9th St. | |
| Richmond, VA 23219 | achiang@oag.state.va.us |
| Address | E-mail address (print or type) |

**CERTIFICATE OF SERVICE** *(required for parties served outside CM/ECF)*: I certify that this document was served on _____ by ☐ personal delivery; ☐ mail; ☐ third-party commercial carrier; or ☐ email (with written consent) on the following persons at the addresses or email addresses shown:

_____        _____
Signature                              Date

1/28/2020 SCC

[Print for PDF for Filing]  [Reset Form]